## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| **ASHLEY FERREIRAS,** <br> c/o WHITTAKER LAW, LLC <br> 2055 Reading Road, Suite 260 <br> Cincinnati, Ohio 45202 <br><br>     **Plaintiff,** <br><br> **v.** <br><br> **THE CITY OF COVINGTON,** <br> c/o City Solicitor <br> David Davidson, Esq. <br> 20 W. Pike Street <br> Covington Kentucky 41011 <br><br> and <br><br> **DOUGLAS ULLRICH, individually and in his capacity as a public official acting under color of State law,** <br> c/o Covington Police Department <br> One Police Memorial Drive <br> Covington, Kentucky 41014 <br><br> and <br><br> **ANTHONY FRITSCH, individually and in his capacity as a public official acting under color of State law,** <br> c/o Covington Police Department <br> One Police Memorial Drive <br> Covington, Kentucky 41014 <br><br>     **Defendants.** | Case No.: _____ <br><br> **Judge:** _____ |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff Ashley Ferreiras, by and through counsel, and for her

Complaint and Jury Demand against Defendants Douglas Ullrich, Anthony Fritsch, and

the City of Covington, Kentucky alleges as follows:

**NATURE OF THIS CASE**

1.     Plaintiff initiates this civil action under 42 U.S.C. §1983 from the physical and sexual assault of Plaintiff Ashley Ferreiras, and the deprivation and violations of her rights, privileges, and immunities arising under the United States Constitution, and secured by federal law and the laws of the United States by the Defendants Douglas Ullrich and Anthony Fritsch, individually and in their capacities as police officers and public officials acting under color of State law.

2.     Specifically, Plaintiff alleges that Officers Ullrich and Fritsch (a) Retaliated against her for exercising her rights protected by the First Amendment, (b) used excessive force against her, and caused her to be unlawfully arrested in violation of the Fourth and Fourteenth Amendments, (c) and deprived her of her procedural and substantive due process rights protected by the Fifth and Fourteenth Amendments. Plaintiff also alleges that the same acts and omissions of Officers Ullrich and Fritsch constitute a conspiracy to deprive Ms. Ferreiras of her rights, privileges, and immunities arising under the Constitution and secured by federal law and the laws of the United States in violation of 42 U.S.C. §1985(3).

3.     Ms. Ferrerias also proceeds separately against the Defendant the City of Covington, Kentucky in its own right under Section 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny for approving, adopting, ratifying, and endorsing the unlawful and unconstitutional conduct of Officers Ullrich and Fritsch pursuant to its policies, procedures, and customs which were the driving force behind the acts and omissions of the same underpinning this Complaint.

4.      Plaintiff finally pursues tort claims arising under Kentucky law against Officers Ullrich and Fritsch for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery; and (b) claims against Officer Ullrich for sexual abuse arising under Kentucky Revised Statute §446.070 and Chapter 510 of the Kentucky Revised Statutes.

5.      By this civil action, Plaintiff seeks relief in the form of compensatory damages, equitable relief, injunctive relief, statutory relief, damages for emotional distress and psychological injuries, punitive damages, reimbursement of her attorney's fees and costs, and all other relief to which she's entitled in law and equity, in excess of the jurisdictional threshold of this Court.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

7.      At all times relevant to this Complaint, Plaintiff Ashley Ferrerias resided in Kenton County, Kentucky.  As of the date of the filing of this Complaint, she is a resident of Kenton County, Kentucky.

8.      At all times relevant to this Complaint, Defendant Douglas Ullrich has been a City of Covington, Kentucky police officer and resident of Kenton County, Kentucky.

9.      At all times relevant to this Complaint, Defendant Anthony Fritsch has been a City of Covington, Kentucky police officer and resident of Campbell County, Kentucky.

3

10.     At all times relevant to this Complaint, the City of Covington, Kentucky has been a home-rule class municipality located in Kenton County, Kentucky.

11.     This Court has personal jurisdiction over the parties to this action and subject matter jurisdiction over the controversy alleged in this Complaint under (a) 28 U.S.C. §1331 based on the federal questions presented, and (b) 28 U.S.C. §1367 based on the Court's supplemental jurisdiction over Plaintiff's claims arising under the laws of the Commonwealth as part of the same case and controversy as her claims arising under federal law.

12.     The United States District Court for the Eastern District of Kentucky at Covington is the appropriate venue for this civil action under 28 U.S.C. §1391. The parties reside, or, at the time events took place, reded in this jurisdictional district and the events giving rise to Plaintiff's claims also occurred within this jurisdictional district.

## FACTS

### The Events of May 4, 2023

13.     Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

14.     The facts giving rise to this Complaint occurred primarily on May 4, 2024. At that time, Ms. Ferreiras lived in a home in Covington with a gated yard on the 1500 block of Nancy Street, immediately abutting the public sidewalk.  She was employed as a restaurant manager in Cincinnati.

15.     On or about April 20, 2023, Ms. Ferrerias broke her ankle.  She had surgery for that injury on April 26, 2023.

16.     On the evening of May 4, 2023, Ms. Ferreiras was at home convalescing with the help of her brother who was visiting from Florida.  She was on physician-ordered bedrest to ensure that she didn't put weight on her surgically repaired ankle and was incapable of ambulating at all without using her crutches.

17.     At around 11:20 p.m., Ms. Ferreiras noticed flashing blue police car lights outside her bedroom window facing Nancy Street on the second floor of her house.  When she looked out her window, she saw seven or eight police cars, and as many or more Covington police officers surrounding her boyfriend's SUV.

18.     She opened her window and called out to the officers to ask what was going on.  Receiving no response, and with the assistance of her brother and her crutches, Plaintiff made her way gingerly down the staircase of her home, out the front door, and to the front porch, which has a clear view of the street.

19.     Upon stepping out to the porch, Ms. Ferreiras saw Officers Ullrich and Fritsch, and other officers confronting her boyfriend, whom they'd pulled over for a single broken headlight.

20.     Concerned, she called out again.  Again, having received no response, at about 11:28 p.m. Ms. Ferreiras inched her way down her porch stairs, on her crutches.

21.     She then limped her way to the gate of her fenced-in yard.

22.     Out of concern for her boyfriend, Ms. Ferreiras opened her gate and stepped onto the public sidewalk.

23.     The entirety of the events of that evening were captured on the body-worn cameras ("BWCs") of Officers Ullrich, Fritch, and others, as well as the Ring Camera installed at Ms. Ferreiras' front door.

24.     Within four seconds of *appearing* at her gate, Officer Ullrich escalated a benign traffic stop by threatening Ms. Ferreiras - who stands all of 5'4" tall – that she was "going to jail" if she stepped an inch onto the public sidewalk:



25.     Neither Officer Ullrich, his fellow officers, nor any member of the public was at any risk of harm at any point that evening.

26.     In response, Ms. Ferrerias calmly requested that Officer Ullrich not touch or disrespect her.

27.     Within 39 seconds of appearing at her gate, Officer Ullrich reached for one of Ms. Ferreiras' crutches:



28.     She responded by informing him that she'd just broken her ankle.  Officer Ullrich ignored her, however, and forcibly grabbed one of her crutches, yanking it out from under her arm.  That sudden and violent action caused Ms. Ferrerias to slip and land her body weight on her surgically repaired ankle, which in turn sent blinding pain that she could not control.

29.     To relieve that pain, Ms. Ferrerias tried to shift her weight back to her crutches, but Officer Fritch grabbed her other crutch and threw it out of her reach, causing her to fall to the ground in pain.  Officer Ulrich repeatedly ordered: "Goddamn it woman, stop kicking."  According to his BWC, however, Ms. Ferreiras **couldn't**, and wasn't moving in any manner not **caused** by Officers Ullrich and Fritsch, much less kick anyone:



30.     Officer Fritsch punched Ms. Ferrerias in the back of the head.

31.     Throughout this assault, Ms. Ferreiras' brother desperately implored Officers Ullrich and Fritsch to stop attacking his sister.  He repeatedly tried to explain to them that she couldn't stand or otherwise move on her own without crutches because she'd just had surgery on her broken ankle.

32.     Ms. Ferreiras pointed out that she was "just standing in front of her house" when Officers Ullrich and Fritsch assaulted her.  Officer Ullrich agreed, stating: "Right, but you are going to jail."

33.     Officers Ullrich and Fritsch then handcuffed and forcibly dragged Ms. Ferreiras across the sidewalk and street to a parked car.

34.     Officers Ullrich and Fritsch then threw Ms. Ferreiras face down into the backseat of that car.  Because of her physical limitations and being handcuffed in the

backseat of a car, Ms. Ferreiras was incapable of following any of the commands of her attackers.

35.    During his attack on Ms. Ferreiras, Officer Ullrich repeatedly and deliberately grabbed her breasts, to which she objected.  Officer Ullrich ignored her and continued to grab and fondle her breasts.

36.    Officers Ullrich and Fritsch then drove Ms. Ferreiras to the St. Elizabeth Edgewood Emergency Room.  During the emergency room visit, Officer Ullrich told Officer Fritsch to make sure that he was "on blue."  According to Axon Body Cameras, the term "on blue" means that BWC audio is muted and not recording, though Ms. Ferrerias didn't know what that term meant at the time.  Per Covington Police Department policy, BWCs must be on and recording video and audio at all times when interacting with the public.

37.    At St. Elizabeth, Ms. Ferreiras received X-Rays, was given some pain medication, and handed back over to her attackers.

38.    The After Visit Summary supplied by St. Elizabeth notes that she was diagnosed with "acute ankle pain," "right wrist pain," and "closed head injury."

39.    The ED Provider Notes prepared contemporaneously by St. Elizabeth staff state as follows:

> She states that she was hit multiple times and arrested and now having right wrist pain.  She states she was hit head but did not lose consciousness. No blood thinners.  She is supposed to be non-weightbearing left ankle after ORIF recently.  Patient states during the altercation and arrest she put weight on the ankle and is concerned it may be injured.

40.    As to Ms. Ferreiras' ankle surgery, the ED Provider Notes state:

ANKLE SURGERY Left 4/26/2023 left ankle open reduction internal fixation lateral malleolus fracture, open repair syndesmosis, closed treatment posterior malleolus fracture.

41.    She was then cleared to be taken to jail.

42.    Because she was arrested and of the nature of her State-provided health insurance, this trip to the emergency room was billed directly to Ms. Ferreiras.

43.    Officers Ullrich and Fritsch then drove Ms. Ferrerias to the Kenton County Detention Center.  While driving, they blared loud music to deliberately conceal their voices.

44.    Upon arriving at the jail, Ms. Ferreiras requested a female officer which was denied, though a female officer was available.  She was booked, processed, and spent the night in jail.  No one else was arrested that evening or charged with any crime. She was released on a $2,500.00 bond the next morning, and charged with, among other things, assault on a police officer.

### Officers Ullrich and Fritsch

45.    Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

46.    The retaliatory and violent behavior discussed above is familiar to citizens who have had contact with Officer Ullrich.  Indeed, in a 2020 OpEd, he wrote: "I frequently quip that I'm not good at interacting with normal people anymore because I spend most of my time with drug dealers and prostitutes."

47.   Officer Ullrich has been employed as a police officer by the City of Covington since 2011.  He lives in Park Hills, Kentucky with his spouse, Assistant Commonwealth Attorney Emily J. Arnzen.

48.   Before that, he was employed by the Cincinnati Arts Association for six months in 2010 as a security guard, and for six months before that as a kitchen supervisor at the Butler County, Ohio jail.

49.   Between October 2009 and January 2010, Officer Ullrich was employed at the Cincinnati Zoo as a security guard, from whom he was accused of stealing.  He was also accused of stealing from LaRosa's when he worked there between 2002 and 2005.

50.   Between May 2009 and October 2009, Officer Ullrich was employed as a police officer in Valdez, Alaska.  He was refused admission to the training academy in that State and asked to resign due to "officer safety issues."

51.   During the application process for employment with the City of Covington, Officer Ullrich admitted to breaking into cars when he was 20 years old.

52.   He failed several portions of his interview assessment including without limitation for (a) having unreasonable career goals; (b) not having any skills to speak of; (c) not displaying the values that the Department purports to uphold; and (d) having generally poor language skills.

53.     As to Officer Ullrich's tenure with the Valdez Police Department, one of his interviewers noted that they thought it was unfair for Ullrich to be judged unworthy of entering the academy with his then lack of experience.  Despite admitting to being canned by the Valdez Police Department for "officer safety issues," there's no explanation for that in his personnel file.

54.     In 2014, Officer Ullrich had 11 documented instances of misconduct as a police officer, including without limitation (a) tasing a suspect who was running away from him, (b) failing to log $800 in cash and other evidence, (c) turning off his body-worn camera before a use of force, (d) improperly charging a citizen with 69 counts of gun paraphernalia for a bag of unused syringes, (e) overdependence on traffic enforcement, (f) leaving the scene of an incident, and (g) creating "tension that was not needed" which was captured on BWC.  He received no reprimand, suspension, or other consequences for any of these incidents.

55.     In June of 2014, Officer Ullrich admitted to "violating every policy," before being warned by a fellow officer that admitting things like that in writing could land him as a defendant in a federal lawsuit:

From: dullrich

Recipients:
cbeil,dullrich,ewilliams,gpurvis,hp,jcraig,jmcerlane,jmiskanin,jrudolph,jtucker,mapuser,mhugenberg,mri
chardson,pnoll,rauton,rchristen,rlinton,rmalone

Timestamp: 6/27/2014 3:29:19 PM

i violate every policy

From: rauton

Recipients:
cbeil,dullrich,ewilliams,gpurvis,hp,jcraig,jmcerlane,jmiskanin,jrudolph,jtucker,mapuser,mhugenberg,mri
chardson,pnoll,rauton,rchristen,rlinton,rmalone

Timestamp: 6/27/2014 3:32:28 PM

I hope u guys realie these messages are saved, even when u "delete" them, so b careful what u say...if u
r ever the defendant in a federal case, it could come back to haunt...just my piece of advice, been there,
done that, it was not fun

56.     Neither the City nor CPD investigated Officer Ullrich's admission that he

"breaks every policy," or otherwise took action against him.

57.     Ullrich has been a defendant in *two* federal lawsuits, in addition to this

action.

58.     For example, in *Wynn v. City of Covington*, No. 21-137-DLB-CJS (E.D.

Ky.), the plaintiff alleges that he was pulled over in 2020 in Covington.  Upon arriving at

the scene, the plaintiff alleges that Officer Ullrich instructed another officer to force him

out of the car, claiming that he smelled marijuana.  The other officer removed the plaintiff

from his vehicle, and with Officer Ullrich's help, put him in handcuffs.  Officer Ullrich and

the other officer demanded that the plaintiff consent to a "thorough search" of his body,

which the plaintiff refused.  The plaintiff alleges that the other officer and Officer Ullrich

then "aggressively forced a second search of his person," after a third officer, arrived and

helped subdue the plaintiff.

59.     The plaintiff in *Wynn* alleges further that the officers slammed him against

a police car, searched him, attacked him with punches and kicks, and that he became

unconscious.  He alleges that he later came to face down, with his pants down, and his

underwear cut off, with the officers claiming to have found drugs in his underwear and

socks.  He also alleges that as a result of the incident, he suffered "a torn ligament in his

shoulder, hernia in his [groin], and severely injured [wrists] along with other bruises and scrap[e]s on his face, as well as blood in his urine for weeks." He alleges that his injuries went untreated, despite his complaints, while detained in the Kenton County Detention Center for forty days.

60.     The plaintiff in *Wynn* alleges that although Officer Ullrich acknowledged that the incident was captured on BWC, the video later disappeared.

61.     Similarly, in *Cundiff v. Ullrich*, No. 21-72-DLB-CJS, (E.D. Ky.), Officer Ullrich was accused of searching the plaintiff on the side of the road by putting his hands down the plaintiff's underwear and inserting his finger into the plaintiff's rectum to search for drugs. He did so without a warrant "because, in his experience, such warrants are rarely granted absent extreme circumstances." He also did so without the plaintiff's consent. He found no drugs. The plaintiff later brought a civil action in this Court for First Amendment Retaliation, violations of his Fourth Amendment rights, and conspiracy. The plaintiff survived summary judgment on his claims arising under the First and Fourth Amendments. This Court found that Officer Ullrich wasn't entitled to qualified immunity. The plaintiff in that action didn't prevail at trial.

62.     Ms. Ferrerias doesn't know Mr. Wynn or Mr. Cundiff and has never spoken to them about their cases. Nor does she otherwise have any independent knowledge of the facts alleged in either case.

63.     In 2015, Officer Ullrich was reprimanded for six automobile accidents in four years. He caused three of them.

64.     In 2016, Officer Ullrich was reprimanded for insubordination.

65.     In 2017, Officer Ullrich was reprimanded for causing another automobile accident but was allowed to use a vacation day to avoid suspension.

66.     In 2022, Officer Ullrich was reprimanded for not logging evidence.

67.     Officer Fritsch has been employed by the City of Covington and under the training of Officer Ullrich since 2022.

### **Ashley Ferreiras**

68.     Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

69.     At the time of the facts giving rise to this Complaint, Ms. Ferreiras had never had a negative interaction, altercation, or incident with the police.  She had never been in trouble with the law.  She had no criminal record in the Commonwealth or otherwise.  She'd never been arrested or had any experience navigating the justice system, police stations, correctional facilities, or courthouses.

70.     She had nothing but positive views and interactions with law enforcement.

71.     For example, between 2014 and 2019, she worked as a manager of the coffee shop in the Northern Kentucky Convention Center and across from the Kenton County Justice Center.  Many of her regular customers were police officers representing many jurisdictions.  She had friendly interactions with the officers who came into her shop, and never thought twice about their courtesy toward her, her staff, customers, and members of the public generally.

72.     By way of another example, Ms. Ferreiras supported police officers during the summer of unrest in 2020, writing on Instagram as follows:



**The City of Covington**

73.     Plaintiff incorporates the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

74.     The City of Covington is the largest municipality in Kenton County and Northern Kentucky, and one of two county seats, the other being Independence. According to the 2022 Census, the City has approximately 40,956 residents, and a

16

population density of approximately 3,103.81 residents per square mile.  It is the fifth-largest municipality in the Commonwealth.

75.    The City is governed by Mayor Joseph U. Meyer and four Commissioners.

76.    The City maintains, funds, and operates eight Departments, of which the Covington Police Department ("CPD") one.  CPD is currently under the leadership of Chief Brian Valenti.

77.    The City and CPD employ approximately 114 sworn officers.

78.    The City holds CPD to the public as follows: "All members of the Covington Police Department strive to demonstrate integrity, professionalism, justice, and compassion."

## CAUSES OF ACTION

79.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

80.    At all times relevant to this Complaint, Officers Ullrich and Fritsch were the employees, agents, or representatives of the City of Covington.

81.    Under Section 1983, State actors like Officers Ullrich and Fritsch are prohibited from violating the civil rights of others.  Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

82.    Officers Ullrich and Fritsch are "persons" within the meaning of Section 1983.

83.     At all times relevant to this Complaint, and as described more specifically in Counts I, II, III, IV, and V, below, Officers Ullrich and Fritsch, jointly and severally, acted in their nondiscretionary capacities as police officers, public officials, and State actors under color of the law of the Commonwealth of Kentucky.

## Count I
### 42 U.S.C. §1983: Excessive Force,
### Violations of the Fourth and Fourteenth Amendments
### (Officers Ullrich and Fritsch)

84.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

85.     As described in this Complaint, Officers Ullrich and Fritsch knowingly, intentionally, wantonly, and maliciously used objectively unreasonable force against Ms. Ferreiras in affecting her unlawful arrest,

86.     The conduct of Officers Ullrich and Fritsch described in this Complaint amounts to a violation of Ms. Ferrerias' clearly established constitutional right to be free of excessive force under the Fourth and Fourteenth Amendments.

87.     The conduct of Officers Ullrich and Fritsch described in this Complaint further deprived Ms. Ferreiras of her rights secured under federal law and the laws of the United States.

88.     As a direct and proximate result of the same, Officers Ullrich and Fritsch have caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count II**
**42 U.S.C. §1983: False Arrest,**
**Violations of the Fourth and Fourteenth Amendments**
**(Officers Ullrich and Fritsch)**

89.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

90.     As described in this Complaint, Officers Ullrich and Fritsch knowingly, intentionally, wantonly, maliciously, and unreasonably arrested, seized, detained, and deprived Ms. Ferreiras of her liberty without probable cause to suspect her of committing any crime.

91.     The conduct of Officers Ullrich and Fritsch described in this Complaint amounts to a violation of Ms. Ferrerias' clearly established constitutional right to be free from unlawful arrest under the Fourth and Fourteenth Amendments.

92.     The conduct of Officers Ullrich and Fritsch described in this Complaint further deprived Ms. Ferreiras of her rights secured under federal law and the laws of the United States.

93.     As a direct and proximate result of the same, Officers Ullrich and Fritsch have caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count III**
**42 U.S.C. §1983: Retaliation,**
**Violations of the First Amendment**
**(Officers Ullrich and Fritsch)**

94.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

95.     As described in this Complaint, Ms. Ferreiras engaged in conduct protected by the First Amendment, federal law, and the laws of the United States, including without limitation by:

      a.      Possessing and occupying her lawful residence;

      b.      Lawfully occupying a public sidewalk;

      c.      Speaking publicly about matters of broad public concern including without limitation (i) the conduct of police officers including without limitation, Officers Ullrich and Fritsch on a public residential street, (ii) objecting to being touched and disrespected by Officers Ullrich and Fritsch, (iii) objecting to the physical pain and distress caused by Officers Ullrich and Fritsch, (iv) informing Officers Ullrich and Fritsch that she was breaking no law and that they had no probable cause to detain, arrest, or otherwise deprive her of her liberty, (v) inquiring about the well-being of her boyfriend, and (vi) informing Officers Ullrich and Fritsch of her physical limitations and injuries, (vii) requesting that a female officer be assigned to process her intake into the Kenton County Detention Center; and (viii) objecting to being sexually assaulted and abused by Officer Ullrich;

      d.      Freely associating with her brother; and

      e.      Freely associating with her boyfriend.

96.     As described in this Complaint, Officers Ullrich and Fritsch deliberately, knowingly, and wantonly retaliated and took adverse actions against Ms. Ferreiras that would deter a person of ordinary firmness from continuing to engage in constitutionally protected conduct, including without limitation by (a) physically assaulting her; (b) arresting, detaining, and otherwise depriving her of her liberty; (c) sexually assaulting and abusing her; (d) deliberately concealing their acts and omissions by disabling the audio on their BWC to frustrate and prevent her access to discoverable and exculpatory information; and (e) denying her access to a female officer to process her intake into the Kenton County Detention Center.

97.     Officers Ullrich and Fritsch were motivated to retaliate against Ms. Ferreiras and take the adverse actions against her described in this Complaint because she exercised her clearly defined rights to be free of their unconstitutional conduct. They did so knowing that their acts and omissions described in this Complaint violated Ms. Ferrerias' clearly defined constitutional rights and have always been on notice that the same isn't tolerated under the constitution, federal law, and the laws of the United States.

98.     As a direct and proximate result of the same, Officers Ullrich and Fritsch have caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count IV
### 42 U.S.C. §1983: Deprivation of
### Procedural and Substantive Due Process,
### Violations of the Fifth and Fourteenth Amendments
### (Officers Ullrich and Fritsch)

99.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

100.    Under the Fifth and Fourteenth Amendments, Ms. Ferreiras "shall not be deprived of life, liberty, or property, without due process of law."

101.    As described in this Complaint, Officers Ullrich and Fritsch deprived Ms. Ferreiras of her protected interest in her life and liberty (a) without affording her adequate procedural rights and protections before doing so, (b) in a manner that would shock the conscience, and (c) in no way rationally related to advancing any legitimate State interest.

102.    As a direct and proximate result, Officers Ullrich and Fritsch have caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count V
### Conspiracy to Violate Civil Rights,
### Violation of 42 U.S.C. §1985(3)
### (Officers Ullrich and Fritsch)

103.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs of this Complaint as if fully rewritten.

104.    As described in this Complaint, and at all relevant times to the same, Officers Ullrich and Fritsch directly or indirectly combined, conspired, and coordinated by force, intimidation, or threat to deprive Ms. Ferreiras of her rights arising under the

United States Constitution, and the equal protection of the laws, privileges, and immunities, secured by federal law and the laws of the United States in violation of 42 U.S.C. §1985(3).

105.    As a direct and proximate result of their violations of 42 U.S.C. §1985(3), Officers Ullrich and Fritsch have caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count VI**
**42 U.S.C. §1983: "Monell Liability"**
**(The City of Covington)**

106.    Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

107.    The City is liable in its own right under Section 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny.  The driving and motivating force of the acts and omissions of Officers Ullrich and Fritch in causing the compensable injuries sustained by Ms. Ferreiras, in their capacities as police officers and public officials acting under color of State law, was the execution of the City's policies, procedures, and customs.  This is the case whether or not the City's policies, procedures, and customs are directly or indirectly derived (a) from the official acts and edicts of lawmakers and officials, and/or (b) formal approval through the City's official decision-making channels.

108.    The City is also liable in its own right under Section 1983, *Monell* and its progeny because the officially executed policies, procedures, and customs of CPD,

and/or its tolerance of the same lead to, caused, and resulted in the deprivation of Ms. Ferreiras' constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments as described in this Complaint, and secured by federal law, and the laws of the United States, by the inaction of the Police Department.

109.    But for the acts and omissions of the officials of the Police Department with final decision-making authority, as a matter of policy or custom, the City has tolerated, endorsed, accepted, ratified, approved of, and acquiesced to the violations of Ms. Ferreiras' constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments, as secured by federal law and the laws of the United States, without limitation in their negligent or deliberately indifferent:

   a.    Hiring and retaining Officers Ullrich and Fritsch;

   b.    Failure to properly train Officers Ullrich and Fritsch;

   c.    Failure to properly supervise Officers Ullrich and Fritsch; and

   d.    Failure to discipline and correct the unlawful acts and omissions of Officers Ullrich and Fritsch described in this Complaint.

110.    As described in this Complaint, the City also ratified, approved of, supported, endorsed, adopted, and acquiesced to Officer Ullrich's unlawful and unconstitutional acts and omissions actions described in this Complaint by promoting him multiple times, most recently to the SWAT team in keeping with its policies, procedures, and customs.

111.    But for the City's approval, adoption, toleration, ratification, endorsement, and acquiescence to the unlawful and unconstitutional conduct of Officers Ullrich and

Fritsch described in this Complaint as a matter of custom, policy, and procedure, which was the driving and motivating force behind the same, Ms. Ferrerias would not have been subject to the deprivation of her rights arising under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution as secured by federal law and the laws of the United States.

112.   As a direct and proximate result of the same, the City of Covington has caused Plaintiff compensable injuries, harm, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count VII**
**Sexual Abuse**
**(Officer Ullrich)**

113.   Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

114.   Kentucky Revised Statute §510.110(1) defines sexual abuse as subjecting another person to sexual contact (a) by forcible compulsion; or (b)(1) who is incapable of consent because she is physically helpless.

115.   By forcibly grabbing Ms. Ferreiras's breast without her consent, and/or when she was incapable of consenting because she was physically helpless in the back of his City-issued police cruiser, Officer Ullrich subjected her to sexual abuse as defined by Section 510.110(1).

116.   Sexual abuse is so inherently injurious that Officer Ullrich's intent to cause Ms. Ferrerias injury is assumed.

117.    Officer Ullrich is therefore *per se* liable in tort for his acts and omissions meeting the definition of Section 510.110(1) under Kentucky Revised Statute §446.070 because Section 510.110(1) otherwise supplies no civil remedy, and Ms. Ferreiras is within the class of persons who the statute means to protect.

118.    As a direct and proximate result of Officer Ullrich's sexual abuse of Ms. Ferreiras, she has suffered damages in excess of the jurisdictional threshold of this Court, including without limitation damages for pain, suffering, humiliation, emotional distress, mental anguish and suffering, and psychological injuries to be determined by the trier of fact.

<u>**Count VIII**</u>
**Negligence**
**(Officers Ullrich and Fritsch)**

119.    Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

120.    At all times relevant to this Complaint, Officers Ullrich and Fritsch had legally cognizable duties to exercise ordinary care toward Ms. Ferrerias.

121.    As described in this Complaint Officers Ullrich and Fritsch breached their duties of care to Ms. Ferreiras and were negligent.

122.    As a direct and proximate result of the negligence of Officers Ullrich and Fritsch, Ms. Ferreiras has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count IX
### Intentional Infliction of Emotional Distress
### (Officers Ullrich and Fritsch)

123.   Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

124.   As described in this Complaint, Officers Ullrich and Fritsch engaged in intentional and/or reckless conduct toward Ms. Ferreiras.  This conduct was outrageous and intolerable in that it offended against the generally accepted standards of decency and morality.

125.   As a direct and proximate result, the conduct of Officers Ullrich and Fritsch described in this Complaint caused Ms. Ferreiras severe and serious emotional distress, humiliation, mental anguish and suffering, psychological injuries, and damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count X
### Negligent Infliction of Emotional Distress
### (Officers Ullrich and Fritsch)

126.   Plaintiff incorporates and realleges the preceding paragraphs of this Complaint as if fully rewritten.

127.   As alleged in Count VIII of this Complaint, Officers Ullrich and Fritsch were negligent for their acts and omissions described in this Complaint.

128.   As alleged throughout this Complaint, Officers Ullrich and Fritsch made unwanted physical contact and impact upon Ms. Ferreiras, which has caused her severe emotional distress and psychological injuries.

129.   As a direct and proximate result of the negligent infliction of emotional distress inflicted by Officers Ullrich and Fritch upon Ms. Ferreiras, she has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ashley Ferreiras prays for judgment against Defendants Douglas Ullrich and Anthony Fritsch, individually and in their capacities as police officers and public officials acting under color of State law, and the City of Covington, Kentucky as follows:

A.  Compensatory damages;

B.  Damages for emotional distress and psychological injuries;

C.  Statutory damages;

D.  Equitable relief;

E.  Pre- and post-judgment interest on compensatory damages, emotional distress damages, statutory damages, and equitable relief;

F.  Injunctive relief;

G.  An award of her attorney's fees, and costs;

H.  An award of punitive damages; and

I.  Such other relief the Court deems appropriate in excess of its jurisdictional threshold.

**DATED: May 3, 2024.**

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

**/s/Justin Whittaker**
Justin Whittaker, Esq. (92364)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 259-3758
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**/s/Erik W. Laursen**
Erik W. Laursen, Esq. (OH 0079345)
Pending admission *pro hac vice*
LAURSEN, COLLIVER & MELLOTT, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 457-5545
(513) 457-5544 Fax
erik@otrlaywers.com

**Counsel for**
**Plaintiff Ashley Ferrerias**
