UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION
CASE NO. 2:24-CV-00074-DCR

**ASHLEY FERREIRAS**                                                            **PLAINTIFF**

**v.**

**CITY OF COVINGTON,** *et al.*                                             **DEFENDANTS**

---

**RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

---

The Defendants, City of Covington, and Douglas Ullrich and Anthony Fritsch, individually and in their official capacities as Covington Police Officers, by and through counsel, (collectively "Defendants"), by and through counsel, respectfully submit this Response to Plaintiff's Motion for Leave to File Amended Complaint (Doc. 46).

**I.    LEGAL STANDARD**

Although the Federal Rules of Civil Procedure provide that a court should grant a plaintiff leave to amend "when justice so requires," Fed. R. Civ. P. 15(a)(2), "the right to amend is not absolute or automatic," *Justice v. Petersen*, 2022 U.S. App. LEXIS 16888 (6th Cir.). Courts have substantial discretion under this standard, and a motion to amend a complaint should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile. *See Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted). A stricter standard is applied if granting leave to amend also requires that the case schedule be modified. Fed.

1

R. Civ. P. 16(b)(4). In such a situation, leave may only be granted "for good cause." *Id*. Additionally, "a movant seeking to file an untimely motion must also demonstrate excusable neglect." *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 241 (E.D. Ky. 2018) (citing Fed. R. Civ. P. 6(b)(1)(B)). In adjudicating such a motion for leave to amend a complaint filed after the amendment deadline, the Court first looks to whether good cause exists, then whether the delay was excusable, and finally to whether other factors require the Court to deny the motion. *See id*. at 240-42.

## II. PLAINTIFF CANNOT DEMONSTRATE GOOD CAUSE UNDER RULE 16(B) AND THE PROPOSED AMENDMENT WOULD CAUSE UNDUE DELAY AND PREJUDICE

Plaintiff's motion fails because she cannot demonstrate "good cause" under Rule 16(b) for seeking leave to amend at this late stage. Two factors are considered when a court determines whether good cause exists for amending a complaint - (1) whether the original deadline could have been met with due diligence and (2) whether the nonmoving party will be prejudiced. *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)).

Plaintiffs may show good cause by demonstrating "that despite their diligence they could not have met the original deadline" set in the scheduling order. *Leary*, 349 F.3d at 907. The Sixth Circuit has often considered what a plaintiff knew at the time of the deadline in determining whether the original deadline could have been met. *See, e.g., Carrizo (Utica) LLC v. City of Girard*, 661 F. App'x 364, 368 (6th Cir. 2016) (upholding denial of leave to amend when the plaintiff knew the facts underlying the amendment prior to the deadline); *Ross*, 567 F. App'x at 306 ("A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the

2

complaint before the deadline."); *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536-37 (6th Cir. 2008) (affirming the district court's denial of leave to amend when the plaintiff "had knowledge of all of these facts long before the pleading deadline").

Here, discovery is nearly closed, has been exchanged, the parties and witnesses deposed and experts have been disclosed. Plaintiff's proposed amendment would inject four new, fact-intensive Title II claims that would necessitate reopening discovery, retaking depositions, and retaining new experts. Courts have consistently recognized that such late-stage amendments, which would effectively derail the case schedule, are unduly prejudicial and warrant denial. *See, e.g., Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806–07 (6th Cir. 2005); *Walters v. Gill Indus.*, Civil Action No. 5:21-069-DCR, 2021 U.S. Dist. LEXIS 234918, at *17–18 (E.D. Ky. Dec. 8, 2021).

Plaintiff filed this motion on June 25, 2025, over six months after the December 6, 2024 deadline to amend pleadings. (Doc. 16) Her justification for this delay hinges entirely on a claim that "new facts" supporting her ADA claims only became apparent during the June 18, 2025 depositions of Officers Fritsch and Jansen, and the confirmation that certain General Orders were in effect. But these are not new facts.

Indeed, each of Plaintiff's proposed Title II ADA claims rests on facts she has known since the date of her arrest. None of the claims are supported by newly discovered evidence. Rather, each is derived from her own observations, statements, and injuries - facts entirely within her control and knowledge well before the December 8, 2024 amendment deadline.

Plaintiff's failure-to-accommodate claim (Count 11) is based on her allegation that she had a broken foot, used crutches, and informed officers of her physical limitations and inability to walk. She contends that she and her brother made repeated requests for

3

assistance and that those requests were ignored. These facts have been asserted since the original complaint. Plaintiff did not need a deposition to confirm what she herself said, saw, or experienced. The deposition testimony she now cites, such as Officer Fritsch allegedly recognizing she "looked injured," adds nothing material to the factual foundation of her claim. It is merely consistent with what she already claimed was obvious.

Her intentional discrimination theory (Count 12) is similarly rooted in allegations that officers were aware of her physical condition and nonetheless used force against her without modification. Again, these are the same facts she pleaded in support of her excessive force claim. Plaintiff knew that she informed officers of her disability. She knew how they responded. Her new reliance on a statement that she was not entitled to "special treatment" is not new evidence - it is a restatement of the conduct she has always alleged. The factual basis for this claim has been available to her since the incident.

Plaintiff also seeks to add a deliberate indifference claim against the City (Count 13), based on the assertion that Covington failed to train officers on how to accommodate arrestees with mobility impairments. She contends that she could not raise this claim until she confirmed the existence and applicability of the City's General Orders during the June 18, 2025 depositions. That argument is unavailing. Such a claim does not require a plaintiff to possess internal documents prior to filing. Plaintiff could have alleged, based on her own experience, that officers failed to accommodate her disability and that the City's policies or training were deficient. Indeed, she already did so in her Section 1983 *Monell* claim.

Finally, Plaintiff's retaliation claim (Count 14) is likewise unsupported by new facts. She contends that she was retaliated against for requesting accommodations. But again, she is the source of the alleged protected conduct. She knew what she said to the officers, knew

4

they allegedly disregarded her requests, and claims they used excessive force after those communications. The alleged retaliation was, by her own account, apparent at the time. That she now has deposition testimony allegedly confirming the officers were aware of her condition does not change the fact that she could have brought this claim earlier.

Plaintiff's assertion that she was "only able to put together the foundation of her Title II claim seven days ago" is unsupported by fact and law. The legal question of Title II's applicability to arrests has remained unsettled throughout this litigation, and Plaintiff cites no intervening change in precedent to justify her delay. The factual foundation for these claims - her alleged disability, her communication of that disability, and the officers' response - was fully known to her. Her decision to withhold these claims until the eve of close of discovery reflects not diligence but undue delay. This is not good cause, and her motion should be denied.

### III.   PLAINTIFF'S AMENDMENT WOULD BE FUTILE

The law is unsettled with respect to whether Title II applies in the context of an arrest. *See Roell v. Hamilton Cty.*, 870 F.3d 471 (6th Cir. 2017) (acknowledging that the law is unsettled in this area and deciding not to resolve the question). *Roell* was decided on September 5, 2017, and there does not appear to be any U.S. Supreme Court or Sixth Circuit case thereafter that conclusively rules that Title II applies in the context of arrests. This Court should affirmatively rule that it does not.

In this case, to apply Title II would be to hold officers liable for the use of force deemed reasonable. Under this type of application, officers and law enforcement agencies would be subject to liability for the use of any force in any confrontation with a suspect ignoring lawful commands.

5

Title II of the ADA was designed to extend its scope beyond intentional discrimination, mandating entities actively ensure accessibility. However, this requirement is not absolute and requires a thoughtful evaluation of suitable and reasonable accommodation. This nuanced approach is exemplified in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), which involves a complex multifactor analysis assessing the disabled individual's needs within the broader context of the entity's program. By contrast, courts' § 1983 and Fourth Amendment jurisprudence has been rooted in granting deference to officers' "split-second judgments" made in circumstances characterized by tension, uncertainty, and rapid evolution. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This deference includes considerations for the safety of officers facing threats and an awareness of how hindsight may influence a court's evaluation of the prudence of officers' actions. *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020-22 (2014). Title II of the ADA does not, and should not, alter the well-established discretion granted to officers when faced with threatening circumstances. *See e.g. Rosen v. Montgomery County Maryland*, 121 F.3d 154, 157-158 (4th Cir. 1997) (stating "[t]he most obvious problem is fitting an arrest into the ADA at all . . . calling a[n] arrest a 'program or activity' of the County . . . strikes us as a stretch of the statutory language and the underlying legislative intent"). As such, Defendants are entitled to summary judgment as a matter of law.

### A. ASSUMING ARGUENDO TITLE II APPLIES TO ARRESTS, PLAINTIFF'S AMENDMENT WOULD BE FUTILE BECAUSE SHE IS NOT DISABLED

Plaintiff's proposed ADA claims are also futile because she fails to plausibly allege that she was disabled within the meaning of the statute. To state any claim under Title II of the ADA, a plaintiff must first show that she is a "qualified individual with a disability," which requires alleging a physical or mental impairment that "substantially limits one or more

6

major life activities." 42 U.S.C. § 12102(1)(A). A temporary injury such as a broken foot, even if painful or inconvenient, does not meet this threshold. Courts interpreting this standard have consistently held that ordinary bone fractures, including broken feet and legs, do not qualify as "disabilities" under the ADA.

Federal courts applying both pre- and post-amendment ADA standards have concluded that an injury which heals in the normal course and lacks long-term effects is not substantially limiting. In *Ashby v. Amscan, Inc.*, No. 3:15-CV-00643-GNS, 2017 U.S. Dist. LEXIS 33576, at *9 (W.D. Ky. Mar. 8, 2017), the court rejected an ADA claim premised on a fractured foot and ankle, holding that the plaintiff had not established a qualifying disability because her condition did not substantially limit a major life activity. Numerous other courts are in accord. See, e.g., *Smith v. Reg'l Plan Ass'n,* 2011 U.S. Dist. LEXIS 117712, at *14 (S.D.N.Y. Oct. 7, 2011) (holding that a broken bone did not substantially limit a major life activity); *Clark v. Boyd Tunica, Inc.*, No. 3:14-cv-00204-MPM-JMV, 2016 U.S. Dist. LEXIS 25223, at *11 (N.D. Miss. Mar. 1, 2016) (same); *Kramer v. K & S Assocs.*, 942 F. Supp. 444, 446 (E.D. Mo. 1996) (same); *Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002) ("episodic impairments such as broken limbs and appendicitis are not disabilities"); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (broken hand did not constitute a disability).

Plaintiff alleges that she had a broken foot on the date of the incident and that this condition limited her ability to walk, stand, and bend. But these assertions, even if taken as true, describe a temporary physical impairment with no indication of chronic or long-term limitation. There is no allegation that her condition was permanent, that it failed to heal in the normal course, or that it resulted in a lasting restriction on her daily life. Courts have

7

repeatedly held that such short-term conditions do not constitute "disabilities" under the ADA.

Because Plaintiff fails to allege that she is a qualified individual with a disability within the meaning of the statute, all four of her proposed ADA claims fail at the threshold. Her motion should be denied as futile.

**IV.     IN THE ALTERNATIVE, SHOULD THE COURT PERMIT PLAINTIFF TO FILE AN AMENDED COMPLAINT, DEFENDANTS MOVE THE COURT VACATE THE CURRENT REVISED SCHEDULING ORDER AND RE-OPEN DISCOVERY**

In the alternative, should the Court permit Plaintiff to file her amended complaint, Defendants respectfully request that the Court vacate the current Revised Scheduling Order and reopen discovery for the limited purpose of addressing the newly asserted ADA claims. These new claims are legally and factually distinct from the existing excessive force and Fourteenth Amendment claims, which focus on the officers' conduct during the arrest and Plaintiff's alleged mistreatment in custody. In contrast, the proposed ADA claims require inquiry into Plaintiff's medical condition and disability status, the officers' knowledge of that alleged disability, any specific accommodation requests made, and the City's policies and training related to ADA compliance. These subjects were not the focus of prior discovery and were not explored in the depositions of the parties or addressed in the expert disclosures already served. Without additional discovery on these new theories, Defendants would be significantly prejudiced in their ability to prepare a defense.

Defendants have already completed the depositions of Plaintiff and the named officers based on the original claims. They would be unfairly prejudiced if required to defend against an entirely new legal theory without an opportunity to conduct additional discovery. Should the amendment be allowed, Defendants must be permitted to serve targeted written

8

discovery related to Plaintiff's alleged disability, her communications with officers, and her alleged requests for accommodation. Additionally, Defendants must be given the opportunity to re-depose Plaintiff on these topics, and to recall one or more of the officers if necessary to address the new allegations.

Further, because expert disclosure deadlines have already passed, Defendants would need leave to retain additional experts, or request that current experts review and revise their reports, in light of Plaintiff's new theories of liability. The current schedule does not permit this without significant prejudice. The deadlines in place were structured around the claims originally pleaded, and do not account for the late-stage inclusion of complex statutory claims under the ADA. Accordingly, the Court should vacate the existing schedule and enter a new case management order reopening discovery, resetting expert deadlines, and adjusting the dispositive motion and trial schedule as necessary.

Respectfully submitted,

**/s/ Jeffrey C. Mando**
Jeffrey C. Mando, Esq. (#43548)
Olivia F. Amlung, Esq. (#97449)
Casmir M. Thornberry, Esq. (#100623)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY  41011
p: 859.394.6200 | f: 859.392.7200
jmando@adamsattorneys.com
oamlung@adamsattorneys.com
cthornberry@adamsattorneys.com

*Attorneys for Defendants, City of Covington; and Douglas Ullrich and Anthony Fritsch, individually and in their official capacities as Covington Police Officers*

9

## **CERTIFICATE OF SERVICE**

I hereby certify that on **16th** day of July, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will provide notice of electronic filing to: Justin Whittaker, Esq. and Erik W. Laursen, Esq.

*/s/ Jeffrey C. Mando*
Jeffrey C. Mando, Esq.