# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ASHLEY FERREIRAS, | Case No. 2:24-cv-0074 |
| Plaintiff, | HON. DANNY C. REEVES |
| v. | |
| CITY OF COVINGTON, *et al.*, | |
| Defendants. | |

### PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY IN SUPPORT OF HER MOTION TO EXCLUDE EXPERT TESTIMONY AND IN SUPPORT OF HER MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT

**COMES NOW**, Plaintiff Ashley Ferreiras, by and through counsel, and respectfully moves for leave to submit supplemental authority in support of (a) her Motion to Exclude the testimony of Defendants' proposed expert witness [Doc.80], and (b) her Memorandum in Opposition to Defendants' Motion for Summary Judgment, [Doc.92], with two Orders entered by the Court in *Steger v. Willis*, Case No., 2:24-cv-00095-DCR-CJS. Both Orders were unavailable to Plaintiff when she filed her Motion to Exclude and her Memorandum in Opposition to Summary Judgment.

### Expert Exclusion

This Court excluded the plaintiff's expert from testifying about "his personal interpretation of certain segments of body-worn camera video," [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.57, at PageID #701], in response to the defendant police officer's argument that "as a matter of law, he cannot be permitted to testify to his personal interpretation of the body-worn camera video or to make factual conclusions that are reserved for the jury." [*Id.*, Doc.54, at PageID ##674-75]. This is substantially identical

to Plaintiffs' argument in this case, that Defendant's expert should be excluded from offering "color commentary" to the jury about his interpretations of BWC footage.

**Summary Judgment and Immunity**

The Court held in *Steger* that in areas where the BWC footage is ambiguous, the non-moving party "prevails in the context of a motion for summary judgment," as to liability and immunity. [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.53, at PageID #665] [citing *Rudlaff v. Gillispie*, 791 F.3d 638, 640 (6th Cir. 2015)]. As in this case, the plaintiff in Steger supported his claim by noting that the alleged crime was minor, he posed no immediate threat to the defendants or others, and he did not actively resist arrest. [*Id.*, at PageID ##664-67]. There was also a punch to the plaintiff's head, and he alleged that he couldn't comply with the officer's instructions because he wasn't physically able to. [*Id.*].

Just in this case, the officer in *Steger* offered an account of "verbal escalation" and physical aggression in the form of the plaintiff "raising his voice, cursing loudly, [striking] a uniformed officer in the head during an attempted arrest," "active resistance," "ignoring repeated commands," and challenging the officer's authority. [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.53, at PageID #664]. The officer argued that "a brief, defensive response to a physical attack during an arrest falls well within the bounds of constitutional policing." [*Id.*, at PageID #665].

This Court concluded, that "[d]isputed issues of material fact preclude[d] a finding of liability or qualified immunity" for excessive force, because the crime for which the plaintiff was suspected wasn't serious," [2:24-cv-00095-DCR-CJS, Doc.53, at *11]; and a

reasonable jury could find that the police officer used force before an alleged assault by the plaintiff. [*Id*.]. Indeed, just like in *Steger*, the BWC in this case does not clearly confirm that Ms. Ferreiras bit or kicked Officer Ullrich, or that she elbowed Fritsch in the nose. [*Id*.]. Thus, Ferreiras' version prevails in the context of a motion for summary judgment, and a reasonable juror could find that her behavior didn't involve sufficiently violent conduct to justify the level of force she alleges the Defendants used. [*Id*.] [citing *Rudlaff v. Gillispie*, 791 F.3d 638, 640 (6th Cir. 2015)].

As in *Steger*, a reasonable juror could conclude based on the BWC and the parties' respective accounts that the plaintiff's words and actions on his front porch did not pose a threat to the defendants or the public. [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.53, at PageID #666]. While Ms. Ferreiras didn't remain in her yard for the entirety of the incident at issue, she was still not a threat to the public or the Officers when she exited her gate, most obviously because of her obvious physical limitations. As in this case, the plaintiff in *Steger* yelled and cursed, but didn't make verbal or physical threats. While Ullrich generically claims that Ferreiras was a threat because of her crutches and because she wore a mud wrestling t-shirt, just as in *Stegner*, Ferreiras neither displayed a weapon nor threatened them with one at any point during the encounter. [*Id*.]. Given these circumstances, just as in Steger, "a reasonable juror could conclude that [Ferreiras] posed only a minimal safety risk." [*Id*.].

In *Steger*, both the BWC footage and the plaintiff's account indicate that he didn't attempt to flee, and he didn't "ignore any commands to submit to arrest as no one informed him he was under arrest" **before** the use of force. [*Steger*, 2:24-cv-00095-

DCR-CJS, Doc.53, at **12-13]. While the BWC footage in *Steger* may have conclusively indicated that the plaintiff didn't "actively resist," the BWC doesn't conclusively demonstrate that Ms. Ferreiras did actively resist. Moreover, the BWC doesn't conclusively show that Ms. Ferreiras ignored commands to submit to arrest because there was no command for her to so submit, and Officer Ullrich placed her under arrest maybe a second before he grabbed her. [*Id*.].

And although in *Steger*, "there was some struggle to get [the plaintiff's] hands cuffed and to roll him onto his stomach," to the extent there was any struggle here, "this activity occurred after [the officer] had already used force." [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.53, at PageID ##666-67]. Here, Ms. Ferreiras alleges that force was used against her immediately upon being grabbed and before she was told to submit, when Fritsch tossed away her second crutch, when Ullrich pulled her to the ground, before and after she was punched, and before and after she was cuffed. [*Id*.].

Thus, just as in *Steger*, based the BWC and the parties' "accounts" of accounts of the interaction, "a reasonable jury could conclude that [the Officer's use of force was objectively unreasonable and constituted a violation of [her] Fourth Amendment right to be free from excessive force." [*Steger*, 2:24-cv-00095-DCR-CJS, Doc.53, at PageID ##666-67]. Likewise, under circumstances very similar to the instant dispute, but not identical, this Court also held that, "as in the case at hand, the suspects did not resist arrest ***before*** the use of force, were not informed they were under arrest, and did not initiate any physical confrontation. [*Id*.]. To the contrary, when this incident occurred, 'the right to be free from physical force when one is not actively resisting the police was

4

clearly established.'" [*Id.*] [citing *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022); *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010); *Griffith v. Coburn*, 473 F.3d 650, 659-60 (6th Cir. 2007)].

**DATED: November 4, 2025.**

Respectfully submitted,

*/s/Justin M. Whittaker*
Justin M. Whittaker, (92364)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 457-5545
(513) 436-0689 (fax)
Justin@WhittakerLawFirm.com

**Counsel for
Plaintiff Ashley Ferreiras**

## CERTIFICATE OF SERVICE

I certify that on **November 4, 2025**, I electronically filed the foregoing Motion with the Clerk of Courts of the United States District Court, Eastern District of Kentucky; that it is available for viewing and downloading from the Court's CM/ECF by all participants in the case who are registered CM/ECF users; and that service is accomplished by operation of the same.

*/s/Justin M. Whittaker*
Justin M. Whittaker, Esq. (92364)